AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

FILED

NOV - 5 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>LG Cellular Phone, Model No. Q710AL, MEID No.<br>089466522504350072 more particularly described in A-3 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 19MJ4910

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A-3

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of Controlled Substances; Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Vincenzo L. Zoni
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __11/5/19__

_____
*Judge's signature*

City and state:  San Diego, CA

Honorable Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

1    **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

2        I, Vincenzo L. Zoni, having been duly sworn, do hereby state that the following is

3    true to my knowledge and belief:

4                                    **INTRODUCTION**

5        1.    I make this affidavit in support of an application for a warrant to search the

6    following electronic devices, as further described in Attachments A-1 through A-4

7    (collectively the "**Target Devices**"), and seize evidence of violations of federal law,

8    namely

9    21 U.S.C. §§ 952, 960, and 963, as further described in Attachment B:

10                        Alcatel Cellular Phone
                          Model No. 5049Z
11                        IMEI 0149400005548533
12                        ("**Target Device 1**")

13                        Samsung Tablet
                          Model No. SMT330NU
14                        Serial No. R52G20J9ZP
15                        ("**Target Device 2**")

16                        LG Cellular Phone
                          Model No. Q710AL
17                        MEID No. 089466522504350072
18                        ("**Target Device 3**")

19                        ZTE Cellular Phone
                          Serial No. 320484440869
20                        IMEI 990008941610417
21                        ("**Target Device 4**")

22    This search supports an investigation and prosecution of Hector Martinez-Robos

23    ("MARTINEZ-ROBOS") and Rosa Isela Acuna ("ACUNA"), who are presently charged

24    with committing violations of 21 U.S.C. §§ 952 and 960.  A factual explanation supporting

25    probable cause follows.

26        2.    On or about April 8, 2019, I obtained authority to search these **Target**

27    **Devices**. *See* 19-MJ-1417 AGS (S.D. Cal. April 8, 2019). This warrant seeks authority to

28    review the **Target Devices** again, to fully ensure that investigators have seized all data

relevant to the case. That search can take advantage of any updates in software and hardware tools available to investigators, and investigators may use a "PIN" code that Acuna provided for **Target Device 4** to conduct a more thorough search. Moreover, this warrant seeks authority for a broader range of time. Except as noted in Paragraphs 22 and 23, the probable cause provided in this affidavit is the same as in my prior application.

3.      Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized the **Target Devices** from MARTINEZ-ROBOS and ACUNA on January 7, 2019, when they were arrested at the San Ysidro, California, Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960.  The **Target Devices** are currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, Suite 3200, San Diego, California 92101.

4.      Based on the information below, there is probable cause to believe that searches of the **Target Devices** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

5.      Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

**TRAINING AND EXPERIENCE**

6.      I am currently a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") formerly known as the ICE Office of Investigations ("ICE-OI"). I have been employed by ICE OI / HSI as a Special Agent since the agency was first created on March 1, 2003. From 2002 to 2003, I was a Special Agent with a predecessor agency,

2

1   the Immigration and Naturalization Service. Prior to becoming a Special Agent, I served
2   as Border Patrol Agent with the United States Border Patrol, from 1995 to 2002.

3       7.     As a Special Agent for HSI, I am responsible for investigating laws
4   enumerated in Title 8, Title 18, and Title 21 of the United States Code. Included in my
5   responsibilities is the investigation of illicit contraband-smuggling, including narcotics-
6   smuggling, across the United States border.

7       8.     I have completed the USBP Basic Training Course at the Federal Law
8   Enforcement Training Center located in Glynco, Georgia, as well as other follow-up
9   courses required by ICE.

10      9.     Since June of 2016, I have been assigned to the HSI Special Agent in Charge
11  - Investigative Services Group as a liaison between HSI and the United States Attorney's
12  Office for the Southern District of California.

13      10.    Prior to my current assignment, I was assigned to the Deputy Special Agent
14  in Charge San Ysidro, located in San Ysidro, California. My specific assignment was to
15  the Narcotics Response Group. During my tenure, my duties included investigating the
16  illicit trafficking of controlled substances into the United States. During my assignment to
17  the Narcotics Response Group, I participated in the investigation of various drug-
18  trafficking organizations involved in the acquisition, importation, transportation, and
19  distribution of controlled substances into and through the Southern District of
20  California. Because the nature of my ongoing work requires me to keep apprised of recent
21  trends and developments involved in the investigations of drug traffickers, I regularly
22  communicate with agents from the Drug Enforcement Administration, Customs and
23  Border Protection ("CBP"), and other local and state law enforcement officers operating
24  within the Southern District of California.

25      11.    Through the course of my training, investigations and conversations with
26  other law enforcement personnel, I am aware that it is a common practice for narcotics
27  smugglers to work in concert with other individuals and to do so by utilizing cellular
28  telephones, and tablets, to maintain communications with co-conspirators in order to

3

1 further their criminal activities. Conspiracies involving narcotics smuggling generate many
2 types of evidence including, but not limited to, evidence such as voicemail messages
3 referring to the arrangements of travel and payment, names, photographs, text messages,
4 emails, instant messages, social networking messages, maps and directions, and phone
5 numbers of co-conspirators.

6    12.    In the course of my duties, I have been a case agent directing drug-related
7 investigations. I have participated in many aspects of criminal investigations including
8 reviewing evidence, conducting physical and electronic surveillance, and executing search
9 and arrest warrants. I have interviewed defendants and witnesses while conducting various
10 investigations. I have gained a working knowledge and insight into the normal operational
11 habits of narcotics traffickers, with particular emphasis on those who attempt to import
12 narcotics into the United States from Mexico at the San Diego international ports of entry.

13    13.    Based upon my training and experience as an HSI Special Agent, and my
14 consultations with law enforcement officers experienced in narcotics trafficking
15 investigations, and all the facts and opinions set forth in this affidavit, I further submit the
16 following:

17        a.    Drug smugglers use cellular telephones because the devices are mobile
18 and provide instant access to telephone calls, texts, internet, application-based
19 communications platforms (*e.g.*, WhatsApp), and voice messages;

20        b.    Drug smugglers use cellular telephones because they are able to
21 actively monitor the progress of the illegal cargo while the conveyance is in transit;

22        c.    Drug smugglers and their accomplices use cellular telephones because
23 the phones help them arrange for the delivery of cargo at predetermined locations and
24 monitor / plan for arrival times;

25        d.    Drug smugglers use cellular telephones to direct couriers to
26 synchronize drop off and pick up times of the illegal cargo;

27        e.    Drug smugglers use cellular telephones to notify or warn accomplices
28 about law-enforcement activity, such as the presence and posture of marked and perceived

4

*Affidavit in Support of Search Warrant*

1   unmarked patrol vehicles, or the operational status of border checkpoints and border

2   crossings; and

3            f.        The use of cellular telephones by smugglers tends to generate evidence

4   stored on the cellular telephones, including but not limited to emails, text messages,

5   application-based communications, photographs, audio files, call logs, address book

6   entries, IP addresses, social network data, and location data.

7       14.    Subscriber Identity Module ("SIM") Cards, also known as subscriber identity

8   modules, are smart cards that store data for cellular telephone subscribers. Such data

9   includes user identity, location and phone number, network authorization data, personal

10  security keys, contact lists and stored text messages.  Much of the evidence generated by a

11  smuggler's use of a cellular telephone would likely be stored on any SIM Card that has

12  been utilized in connection with that telephone.

13      15.    Tablets, which are also mobile devices, have many, if not all, of the same

14  features as cellular telephones, and so are attractive to drug-trafficking organizations for

15  the same reasons that cellular telephones are. Tablets too are mobile and provide instant

16  access to texts, internet, application-based communications platforms (*e.g.*, WhatsApp),

17  and, for many models, telephone calls and voice messages.

18                          **FACTS IN SUPPORT OF PROBABLE CAUSE**

19      16.    According to a report prepared by CBP Officer Manis, at about 9:30 p.m. on

20  January 7, 2019, Officer Manis was conducting inspections in the pre-primary inspection

21  area at the San Ysidro POE with a K-9 Unit. At that time, the K-9 Unit alerted to the spare

22  tire of a grey Kia Sorento bearing California license plate 6TCL582. Officer Manis

23  informed fellow CBP Officer Garcia of the alert.

24      17.    Per Officer Garcia's report, Officer Garcia came over to the Kia Sorento and

25  inspected the spare tire, which was located under the vehicle. Officer Garcia felt the tire,

26  which felt solid. Officer Garcia then approached the driver, MARTINEZ-ROBOS, who

27  said that he was going to Los Angeles with his passenger, ACUNA, and ACUNA's child

28  (who was also in the car). MARTINEZ-ROBOS told Officer Garcia that he was coming

5

from Tijuana, and he twice said that he had nothing to declare. At this point, Officer Garcia had MARTINEZ-ROBOS get out of the car; he handcuffed MARTINEZ-ROBOS and escorted him to the security office. (The reports prepared by the CBP Officers does not state what ACUNA and her child did at this point, but I am aware from my own training and experience that when a vehicle is sent to secondary inspection, CBP Officers will first remove the occupants and have them wait in an area like the security office at the Port of Entry.)

18.     The Kia Sorrento was sent to secondary inspection and scanned through the "Z-Portal" X-Ray Machine. Per the report of CBP Officer Santos, the scans showed anomalies in the spare tire and in the rear quarter panels of the vehicle.

19.     Per CBP Officer Nicklen's report, Officer Nicklen then removed a package from the rear passenger-side quarter panel of the Kia Sorento; the contents of the package field-tested as positive for cocaine. In total, Officer Nicklen recovered four packages from the quarter panel and 21 from the spare tire; the 25 total packages had a gross weight of 28.68 kilograms.

20.     Per his report, after discovering the first package in the rear passenger-side quarter panel, Officer Nicklen placed MARTINEZ-ROBOS and ACUNA under arrest for the importation of controlled substances. Officer Nicklen also seized the Kia Sorento and the cocaine. Shortly thereafter, I seized the personal effects belonging to MARTINEZ-ROBOS and ACUNA, including the **Target Devices**. Specifically, **Target Devices 1** and **2** were seized from MARTINEZ-ROBOS, and **Target Devices 3** and **4** were seized from ACUNA.

21.     Following their arrests, both MARTINEZ-ROBOS and ACUNA received their *Miranda* rights from HSI Special Agent Raul Rodriguez. Per Special Agent Rodriguez's report, both MARTINEZ-ROBOS and ACUNA claimed not to know about the presence of cocaine in the Kia Sorento.

22.     I note that in the post-arrest interview, ACUNA provided a "PIN" code for **Target Device 3**. Investigators did not make use of that PIN code when attempting their

6

1 | first search, and intend now to use the PIN code to obtain a better download of the device.

2 |     23.   I am also aware of added information tending to support probable cause,
3 | gathered in the course of this investigation. Photographs found on **Target Device 4** tend to
4 | show that ACUNA and MARTINEZ-ROBOS were working together to bring drugs into
5 | the United States; those photos, which are on Acuna's phone, are of (i) the Kia Sorento,
6 | (ii) the rear storage area, (iii) a man standing next to the storage area with his hand on a
7 | spare tire, which investigators believe is MARTINEZ-ROBOS, (iv) various pictures of
8 | tires, (v) MARTINEZ-ROBOS and ACUNA together in an intimate pose, and (vi) pictures
9 | of bulk quantities that, based on my training and experience, are consistent with
10 | methamphetamine and cocaine. And, a review of crossing records shows that ACUNA and
11 | MARTINEZ-ROBOS crossed the border together on several occasions in December 2018,
12 | before getting arrested in January 2019 in this case.

13 |     24.   Based upon my experience investigating drug smuggling, my training, and my
14 | consultation with other investigators who have experience investigating drug smuggling in
15 | near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico
16 | to the United States by hiding the drugs in hidden compartments of cars, and in non-factory
17 | compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use).
18 | Smugglers will then drive north from Mexico and seek to pass through POEs with the drugs
19 | undetected. (I am also aware that such individuals will sometimes try to generate a history
20 | of crossings to show that driving through a POE is ordinary behavior for them.) When they
21 | arrive in the United States, smugglers will take the drugs to a discreet location to transfer
22 | them to other people involved in the distribution chain, who can then send the drugs to
23 | other locations for downstream distribution.

24 |     25.   Given the facts surrounding the arrests of MARTINEZ-ROBOS and ACUNA,
25 | and based upon my experience and training, as well as consultation with other law
26 | enforcement officers experienced in drug smuggling investigations, I submit that there is
27 | probable cause to believe that information relevant to the smuggling activities of
28 | MARTINEZ-ROBOS and ACUNA will be found in the **Target Devices**. Such evidence,

*Affidavit in Support of Search Warrant*

1  which could be in the form of communications, records, data (including but not limited to
2  emails, text messages, other social messaging applications), photographs, audio files,
3  videos, or location data:

4           a.    tending to indicate efforts to import cocaine or some other federally
5  controlled substance from Mexico into the United States;

6           b.    tending to identify accounts, facilities, storage devices, and/or
7  services–such as email addresses, IP addresses, and phone numbers–used to facilitate the
8  importation of cocaine or some other federally controlled substance from Mexico into the
9  United States;

10          c.    tending to identify co-conspirators, criminal associates, or others
11  involved in importation of cocaine or some other federally controlled substance from
12  Mexico into the United States;

13          d.    tending to identify travel to or presence at locations involved in the
14  importation of cocaine or some other federally controlled substance from Mexico into the
15  United States;

16          e.    tending to identify the movement of proceeds associated with the
17  trafficking of cocaine or some other federally controlled substance that was imported from
18  Mexico into the United States;

19          f.    tending to identify the user of, or persons with control over or access
20  to, the **Target Devices**; and/or

21          g.    tending to place in context, identify the creator or recipient of, or
22  establish the time of creation or receipt of communications, records, or data involved in the
23  activities described above.

24      26.    Finally, I note that drug conspiracies generally entail detailed and intricate
25  planning as part of efforts to evade detection by law enforcement. In my professional
26  training and experience, I am aware that this requires planning and coordination in the days
27  and weeks (and often months) prior to the relevant drug-related event. Additionally, I am
28  aware that co-conspirators are often unaware of a subject's arrest and will continue to

8

*Affidavit in Support of Search Warrant*

1  attempt to communicate with the subject after the arrest to determine the whereabouts of
2  their valuable cargo, particularly in the hours following the arrest.   In light of this
3  understanding and the information provided in this affidavit, including the new information
4  provided in Paragraph 23, I believe seek authority to review the devices without a limiting
5  date range.

6                                  **METHODOLOGY**

7          27.    It is not possible to determine, merely by knowing a cellular telephone's or
8  tablet's make, model and serial number, the nature and types of services to which the
9  devices are subscribed and the nature of the data stored on the devices. Cellular devices
10 today can be simple cellular telephones and text message devices, can include cameras, can
11 serve as personal digital assistants and have functions such as calendars and full address
12 books and can be mini-computers allowing for electronic mail services, web services and
13 rudimentary word processing. An increasing number of cellular service providers now allow
14 for their subscribers to access their devices—both phones and tablets—over the internet and
15 remotely destroy all of the data contained on the devices. For that reason, the devices may
16 only be powered in a secure environment or, if possible, started in "flight mode" which
17 disables access to the network. Unlike typical computers, many cellular telephones and
18 tablets do not have hard drives or hard-drive equivalents and store information in volatile
19 memory within the devices or in memory cards inserted into the devices. Current technology
20 provides some solutions for acquiring some of the data stored in some cellular telephone
21 models, and some tablets, using forensic hardware and software. Even if some of the stored
22 information on the devices may be acquired forensically, not all of the data subject to seizure
23 may be so acquired.  For devices that are not subject to forensic data acquisition or that have
24 potentially relevant data stored that is not subject to such acquisition, the examiner must
25 inspect the device manually and record the process and the results using digital
26 photography. This process is time and labor intensive and may take weeks or longer.

27         28.    Following the issuance of this warrant, I will collect the **Target Devices** and
28 subject them to analysis. All forensic analysis of the data contained within the **Target**

                                          9

**Devices** and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29.   Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

30.   Law enforcement has attempted to obtain the evidence sought, pursuant to warrants authorized by this Court.

## CONCLUSION

31.   Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that MARTINEZ-ROBOS and ACUNA used the **Target Devices** to facilitate the offense of drug smuggling and to communicate with co-conspirators. The **Target Devices** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

32.   Because the **Target Devices** were promptly seized following the arrests of MARTINEZ-ROBOS and ACUNA at the San Ysidro POE, there is probable cause to believe that evidence of the smuggling offense committed by them continues to exist on the **Target Devices**.  As stated above, I believe that the date range for this search is from November 7, 2018, up to and including January 8, 2018.

33.   WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Devices**, as described in Attachments A1 through

///

///

///

10

*Affidavit in Support of Search Warrant*

1 │ A-4, and seize the items listed in Attachment B, using the methodology described above.

2 │     I swear the foregoing is true and correct to the best of my knowledge and belief.

3

4 │ _____

5 │ VINCENZO L. ZONI

6 │ Homeland Security Investigations Special Agent
Department of Homeland Security

7

8 │ Subscribed and sworn to before me on
this ____5th____ day of November, 2019.

9

10 │ THE HON. ALLISON H. GODDARD

11 │ United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11